UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:04-CR-25-1BO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM FRAZIER, III | MOTION FOR SENTENCE REDUCTION<br>PURSUANT TO 18 U.S.C. § 3582(c) AND<br>INCORPORATED MEMORANDUM |

The Petitioner, William Frazier, III, by and through undersigned counsel, respectfully moves this Court, pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10(c), for an order reducing his sentence based on the recent amendments to the crack guidelines. In support of this motion, the petitioner shows the following:

MR. FRAZIER IS ELIGIBLE FOR RELIEF UNDER 18 U.S.C. § 3582(c)

**A. Original Conviction and Sentencing**

On February 23, 2004, Mr. Frazier pled guilty to one count of possession with the intent to distribute more than 5 grams of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) and one court of using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C> § 924(c). A presentence report prepared in advance of sentencing found that, under U.S.S.G. § 2D1.1, the base offense level for this conviction was 32 (attributing 143.9 grams of crack to Mr. Frazier). The report also determined that Mr. Frazier had 12 criminal history points which placed him in Criminal History Category V. After subtracting three levels for acceptance of responsibility, these calculations would have resulted in a guideline imprisonment range of 140 to 175 months

1

(29/V). However, the Court then found that Mr. Frazier qualified for the career offender enhancement found at U.S.S.G. § 4B1.1. This enhancement was triggered by a combination of two state convictions. Application of the career offender enhancement increased Mr. Frazier's offense level from 32 to 37 and raised his criminal history category from V to VI. In the end, the Court found Mr. Frazier's total offense level to be 31 (after a three-level reduction for acceptance of responsibility) which combined with his criminal history category of VI, resulted in a guideline range of 262 to 327 months.[1] In short, application of the career offender provision resulted in an imprisonment range nearly twice as long as the pre-enhancement range.

Fortunately for Mr. Frazier, he was able to cooperate with government. Accordingly, on June 3, 2004, the government filed a motion for downward departure based on Mr. Frazier's substantial assistance. The Court granted this motion and sentenced Mr. Frazier to a term of 120 months' imprisonment, a sentence which would have fallen below Mr. Frazier's unenhanced guideline range.

### B. Amendments to the Crack Guidelines and Their Impact on Mr. Frazier's Case

In 2007, the United States Sentencing Commission, in response to widespread criticism of the severity of the crack cocaine penalties, revised the drug quantity table at U.S.S.G. § 2D1.1(c) and reduced by two levels the base offense level applicable to most crack cocaine offenses. *See* U.S.S.G., Amendment 706. The Commission made this sentence reduction retroactively applicable to incarcerated inmates. *See* U.S.S.G., Amendment 713.

Eligibility for a sentence reduction based on these amendments is governed by 18 U.S.C. § 3582(c)(2) which provides:

---

[1] The range would have been 188 to 235, however, due to the application of U.S.S.G. § 4B1.1(c)(2), the penalty increased to 262 to 327.

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)...the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

Because Mr. Frazier's base offense level was determined by U.S.S.G. § 2D1.1 and because that offense level has been indisputably lowered by the amended guidelines, Mr. Frazier is seeking relief under § 3582(c). His eligibility for such relief is somewhat clouded, however, because Mr. Frazier's final guideline sentencing range was dictated by the career offender enhancement of § 4B1.1. However, as shown below, the pre-enhancement, § 2D1.1-driven range was a relevant sentencing factor under both the Guidelines and § 3553(a) at the time of Mr. Frazier's original sentencing, and the newly-lowered range would be even more relevant at any resentencing conducted pursuant to § 3582(c). In sum, because the § 2D1.1 range was an important and potentially influential component of the Court's sentencing calculus, Mr. Frazier's sentence must be deemed to have been "based," at least in part, on that range. Accordingly, because that range has now been lowered by the Sentencing Commission and because that lowering might reasonably cause this Court to chose a different, lower sentence, Mr. Frazier is eligible to be considered for a reduction under the plain language of § 3582(c). Guideline policy statements which might suggest a contrary result cannot be squared with the plain statutory language of § 3553(a) and § 3582(c) and must yield to these statutory commands. In any event, after *United States v. Booker,* 543 U.S. 220 (2005), these policy statements are merely advisory and have no binding effect on this Court.

Simply put, because the Commission has lowered a sentencing range which was a relevant factor for the Court to consider in sentencing Mr. Frazier, this Court has the discretion under § 3582(c) to determine whether this amended range warrants a reduction in Mr. Frazier's sentence.

**C. The Relevance of the § 2D1.1 Range**

In order to be eligible for a reduction under § 3582(c), a defendant's sentence must be "based on a sentencing range" which has been lowered by the Sentencing Commission. The statute does not define this phrase but it cannot be read to limit eligibility to sentences that were "solely based on" or "exclusively based on" the final guideline range because, as *Booker* and its progeny make clear, *no sentence* may be based *solely* on a single guideline range.[2] By law, the final guideline range is only one factor among many which the court must consider in passing sentence. *See Gall v. United States*, __ U.S. __, 128 S.Ct. 586, 596-97 (2007)(after calculating guideline range, "the district judge should then consider all of the § 3553(a) factors" and "may not presume that the Guidelines range is reasonable"). Indeed, the ultimate sentence is the product of a calculus which, by law, must include consideration of a variety of factors, some of which may consist of other guideline ranges which are relevant to the particular case. Such is the case here.

In a very real sense, Mr. Frazier's term of imprisonment was "based on" the old drug quantity table found at § 2D1.1, even though his guideline range was subject to increase under Chapter 4 of the Guidelines. The Guidelines are applied in order, starting with Chapter 1 of the Guidelines Manual and ending with Chapter 5. *See* U.S.S.G. § 1B1.1 (Nov. 2007). In no case can a court simply jump to Chapter 4 and apply the career offender guideline. In other words, application of a Chapter 4B enhancement does not start or, for that matter, end the calculation of a defendant's guideline range. Rather, it is simply one step of doing so. And that being so, a defendant's guideline range is "based on" Chapters 1, 2, 3 and 5, even if the defendant receives a Chapter 4 enhancement.

---

[2]Indeed, this was true even before *Booker*, since even during the time of the mandatory guidelines courts were required to consider the § 3553(a) factors in determining where to sentence within the guideline range and in determining whether a departure from the range was appropriate.

It is impossible to base a defendant's guideline range on the career offender status standing alone. This is because the career offender enhancement requires comparison with the un-enhanced guideline range before it can be applied. *See* U.S.S.G. § 4B1.1(b) (Nov. 2007) ("if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply"). Therefore, the Court's pre-enhancement, §2D1.1 calculations, which found a base offense level of 32, were an integral and inescapable part of the sentencing process.

More importantly, the sentencing range flowing from these § 2D1.1 calculations did not become irrelevant or meaningless after it was supplanted by application of the career offender enhancement which resulted in a higher range. As the Fourth Circuit has held, after calculating the final guideline range, "the court must 'determine whether a sentence within that range ... serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006)(quoting *United States v. Green*, 436 F.3d. 449, 455 (4th Cir. 2006)). In making this determination,

> the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law....If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence").

*Moreland*, 437 F.3d at 432. Indeed, in the context of career offender, the Guidelines specifically recognize that there will be times where the enhancement results in excessive punishment and where a downward departure is necessary to achieve the purposes of punishment. *See*, U.S.S.G. § 4A1.3(b).

Thus, *in every case*, the sentencing court must weigh the imprisonment range prescribed by § 4B1.1 and determine whether some lesser sentence is appropriate. Among the factors relevant to

5

this consideration is the pre-enhancement range derived from the § 2D1.1 table because this range presents an alternative, Commission-sanctioned view of the seriousness of the underlying offense. If the sentencing court were to find that this pre-enhancement range more accurately captures the seriousness of the offense or if it suggests that the career offender-driven range is excessive, the court would be well within its authority to rely on this range as either grounds for departure or variance.

Indeed, a number of courts have utilized precisely this analysis: they have compared the pre-enhancement § 2D1.1 range to the career offender range in order to arrive at an appropriate sentence. For instance, as described in *United States v. Williams*, 435 F.3d 1350, 1354 (11th Cir. 2006), the district court sentenced a career offender by comparing the base offense level for an offense that involved only $350 in crack cocaine to the applicable career offender guideline enhancement and imposed a sentence with the base offense level range, not the career offender range. Similarly, in *United States v. Ortiz*, 502 F.Supp. 2d 712, 717-719 (N.D. Ohio 2007), this sentencing calculus convinced the district court to impose a sentence "halfway" between the cocaine offense level for the offense of conviction and the enhanced career offender sentence. *See also*, *United States v. Vigorito*, 4:04-CR-00011, 2007 WL 4125914, *7 (N.D. Ohio Nov. 20, 2007)(court imposed sentence below career offender range because its "tripling effect" in relation to the powder cocaine offense made the career offender range "inappropriately high").

As these cases show, the base offense level is a proper and relevant factor for the court to consider. In some cases, the court may accord this factor significant weight–perhaps even so much as to justify a departure or variance–and, in other cases, it may be less important. In any event, it always remains a factor to be considered. Therefore, the ultimate sentence which is the product of this consideration is based, at least in part, on the pre-enhancement sentencing range. Thus, when

6

Case 5:04-cr-00025-BO   Document 26   Filed 12/10/08   Page 6 of 16

this range changes, as is the case here by virtue of the guideline amendments, a defendant is entitled under the plain language of § 3582(c) to a judicial determination whether this change warrants a discretionary reduction in his sentence.

**D. Guideline Policy Statements Suggesting that Mr. Frazier is Not Entitled to Relief Conflict with Statutory Authority**

The government may contend that this argument is rebutted by language in the policy statements contained in U.S.S.G. § 1B1.10 which state that a defendant is not eligible for a reduction if "the amendment does not have the effect of lowering the defendant's applicable guideline range *because of the operation of another guideline or statutory provision* (e.g. a statutory mandatory minimum term of imprisonment)." U.S.S.G. § 1.10, n. 1(A)(emphasis supplied). The argument is that, notwithstanding the relevance of the base offense level to the court's sentencing calculus, once that range is supplanted by the career offender enhancement, the language of the policy statement is triggered and operates as a bar to relief. However, as shown below, this policy statement is inconsistent with both Guideline and statutory language and must yield to their superior authority. Moreover, after *Booker*, this language is merely advisory and cannot bind this Court.

In *Stinson v. United States*, 508 U.S. 36, 38 (1993), the Supreme Court held that Sentencing Commission commentary explaining or interpreting a guideline is not authoritative if "it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Simply put, this means that guideline policy statements cannot trump either Guidelines or statutes.

Section 3582(c) states that defendants are eligible for relief if their sentence was "based on" a sentencing range which has been subsequently lowered by the Commission. As shown above, a sentence is "based on" a guideline range if that range was a proper factor for the court to consider in

7

making its sentencing determination pursuant to the requirements of § 3553(a). For instance, § 3553(a)(2)(A) requires the court to take into account the "seriousness of the offense." The pre-enhancement, § 2D1.1-derived range is directly relevant to this inquiry. The drug quantity table found at U.S.S.G. § 2D1.1 represents the Sentencing Commission's best effort to calculate the relative severity of drug offenses. *See Rita v. United States*, 127 S. Ct. 2456, 2463, 2465, 2469 (2007)(guidelines specifically designed to achieve § 3553(a) objectives). Indeed, the amendments reflect the Commission's ongoing effort to refine and improve these relative severity determinations in light of new research and experience. Moreover, the base offense level derived from § 2D1.1 is a far better indicator of the "seriousness of the offense" than the § 4B1.1 range because the career offender enhancement primarily punishes the defendant's recidivism and criminal history rather than the circumstances of the instant offense. Thus, in order to fairly evaluate the "seriousness of the offense," a court, even in a career offender case, must look to the § 2D1.1 range because that, not the § 4B1.1 range, is the range which best reflects the Commission's view of how serious this particular offense is relative to other drug offenses. Accordingly, even though this range is not the final guideline range, it is absolutely relevant to the sentencing process and, therefore, clearly and inevitably a range upon which the actual sentence was "based."

     The Sentencing Commission's contrary view that application of a Chapter 4 enhancement means that a defendant's guideline range was not "based on" Chapter 2's drug quantity table essentially amends the "based on" clause of § 3582(c)(2) to mean something it plainly does not mean–and cannot mean–given how the Guidelines are actually applied. Rather than meaning that the guideline that was amended and made retroactive was part of the calculation of the defendant's guideline range, the Commission would have the phrase "based on" mean that the amended guideline itself must set the final guideline range. Such a direct link between cause and effect is not

8

Case 5:04-cr-00025-BO   Document 26   Filed 12/10/08   Page 8 of 16

what the phrase "based on" as used in § 3582(c)(2) requires. The statute clearly states "based on," not "because of." As such, the Commission's policy statements, in derogation of Congress' statute on this point, are not authoritative.

Moreover, this policy statement's crabbed gloss on the term "based on" is also in irreconcilable tension with recent Supreme Court decisions. When sentencing (or, as here, re-sentencing) a defendant, this Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Rather, this Court must treat the advisory guideline range "as one factor among several" that 18 U.S.C. § 3553(a) mandates it consider, *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), albeit the "initial" factor that it should use as a "starting point," *Gall*, 128 S. Ct. at 596. The Court's view clearly expressed in *Rita*, *Gall*, and *Kimbrough* is that a sentence cannot be based exclusively on any one factor, much less any particular guideline. Rather, every sentence is based on a variety of factors and there is nothing to suggest that pertinent, intermediate guideline ranges are not one of them. The Court's view supercedes any contrary policy statement which improperly attempts to limit the "based on" language of § 3582(c) to the final guideline range. *See Neal v. United States*, 516 U.S. 284, 290 (1996)("the Commission does not have the authority to amend [a] statute we [have previously] construed"); *id.* at 294 (the Commission "has no authority to override the statute as we have construed it").

**E. After *Booker*, Guideline Policy Statements Which Attempt to Limit the Reach of § 3582(c) Are Merely Advisory and Are Not Binding on This Court**

Finally, even if §1B1.10, n.1(A) was a proper exercise of the Sentencing Commission's authority and did not fatally conflict with the language on § 3582(c) and recent Supreme Court precedent, this Court would still not be bound to follow it. After *Booker*, every provision of the Guidelines is advisory. Therefore, to the extent that this policy statement is intended to bar all

9

defendants like Mr. Frazier from relief under § 3582(c), this Court still has the constitutional authority, indeed the duty, to grant relief if it finds such relief is appropriate under § 3582(c).

The leading case in this regard is *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007). In *Hicks,* the Ninth Circuit considered the question whether, in a § 3582(c) proceeding, a district court could grant a sentence reduction below the bottom of the amended guideline range even though such reductions are generally prohibited by § 1B1.10(b)(2)(A).[3] The Ninth Circuit concluded that, after *Booker,* it would be unconstitutional to give *any* provision of the Guidelines mandatory effect, even in the context of § 3582(c).

The Ninth Circuit observed that § 3582(c)(2) "allows the district court to re-calculate the defendant's sentencing range using the newly reduced Guideline, and then determine an appropriate sentence in accordance with § 3553(a) factors." *Hicks,* 472 F.3d at 1170. *Booker*'s "clear language," the Ninth Circuit further noted, "makes the [re-calculated] range advisory." *Hicks*, 472 F.3d at 1170. The Ninth Circuit explained:

> *Booker* explicitly stated that, as by now should be clear, [a] mandatory system is no longer an open choice." *Booker*, 543 U.S. at 263[.] . . . Although the Court acknowledged that Congress had intended to create a mandatory Guidelines system, *Booker* stressed that this was not an option: "[W]e repeat, given today's constitutional holding, [a mandatory Guideline regime] is not a choice that remains open.… [W]e have concluded that today's holding is fundamentally inconsistent with the judge-based sentencing system that Congress enacted into law." *Id.* at 265[.] . . . The Court never qualified this statement, and never suggested, explicitly or implicitly, that the mandatory Guideline regime survived in any context.
>
> In fact, the Court emphasized that the Guidelines could not be construed as mandatory in one context and advisory in another. . . . [T]he Court quickly dismissed this notion, stating, "we do not see how it is possible to leave the Guidelines as

---

[3]The Guidelines do authorize reductions below the bottom of the amended range in cases where the original sentence was the production of a downward departure or variance. In these cases, the Guidelines allow the court to grant a comparable reduction from the amended range. *See* U.S.S.G. § 1B1.10(b)(2)(B).

10

> binding in other cases. . . . [W]e believe that Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others, given the administrative complexities that such a system would create." Id. at 266[.] . . . In short, *Booker* expressly rejected the idea that the Guidelines might be advisory in certain contexts and not in others, and Congress has done nothing to undermine this conclusion.

*Hicks*, 472 F.3d at 1170 (some ellipses and brackets added and some in original). Accordingly, the Ninth Circuit held: "Because a 'mandatory system is no longer an open choice,' … *district courts are necessarily endowed with the discretion to depart from the Guidelines when issuing new sentences under § 3582(c)(2).*" *Hicks*, 472 F.3d at 1170 (quoting *Booker*, 543 U.S. at 263) (emphasis added). "Mandatory Guidelines," the Ninth Circuit concluded, "no longer exist, in this context or any other." *Hicks*, 472 F.3d at 1172.

Next, the Ninth Circuit considered what effect the Sentencing Commission's policy statements should have in a § 3582(c)(2) proceeding after *Booker*. *See Hicks*, 472 F.3d at 1172-73. Addressing whether the policy statements set forth U.S.S.G. § 1B1.10 (Nov. 2000) precluded a district court from "go[ing] below the Guidelines' minimum when modifying a sentence under § 3582(c)(2)," the Ninth Circuit held they did not but, even if they did, they "must be void" under *Booker*. *Hicks*, 472 F.3d at 1172.

The holding of *Hicks* has now been accepted by a number of district courts across the country. For instance, in *United States v. Ragland*, 98-0196-01, __F.Supp.2d __, 2008 WL 2938662 (D.D.C July 1, 2008), the court held that it would violate *Booker* to give any provision of Guidelines mandatory effect, including the policy statements in § 1B1.10 purporting to limit any reduction under §3582(c) to two levels. The Court wrote, "to the extent that a policy statement in the Guidelines contradicts a Supreme Court decision interpreting the Sentencing Reform Act in light of

11

the Constitution, it must be that the policy statement has no effect." *Ragland*, 2008 WL 2938662 at *6. While a court may *consider* these policy statements, it cannot be *bound* by them.

The court in *United States v. Shelby*, 95 CR 79, 2008 WL 2622828 (N.D.Ill. June 30, 2008) reached a similar conclusion. In considering whether it was bound by the policy statements in § 1B1.10, the Court wrote,

> In holding that a mandatory system is no longer an open choice, to the extent that policy statements would have the effect of making the Guidelines mandatory, *Booker* established that they must be void. *Id.* at 1170. *Booker* emphasized that the Guidelines could not be construed as mandatory in one context and advisory in another. [*See*] 543 U.S. at 266, 125 S.Ct. at 768. As a consequence, district courts are necessarily endowed with the discretion to employ the § 3553 factors when issuing new sentences under § 3582(c)(2). The ease and simplicity of mandatory calculations can no longer stand as a substitute for the evaluation of relevant factors necessary to a determination of just punishment. *See Hicks*, 472 F.3d at 1170.

*Shelby*, 2008 WL 2622828 at *2. Accordingly, the court held,

> It seems plain that, aside from mandatory sentences set by Congress, federal district judges are free to consider the full panoply of sentencing considerations expressed in 18 U.S.C. § 3553(a) and to differ from the Guidelines when the judicious application of discretion requires it. *Kimbrough* teaches that, and reason and fairness permit no alternative.

*Shelby*, 2008 WL 2622828 at *4.

Several other courts have reached identical results. *See (Melissa) Hicks v. United States*, Criminal No. 00-0240, Slip Op. (D.D.C. July 29, 2008) (Robertson, J.); *United States v. Barrett*, 2008 WL 938926 (M.D. Fla. April 7, 2008); *United States v. Stokes*, 6:98-CR-109-Orl-22GJK, 2008 WL 938919 (M.D. Fla. April 7, 2008); *United States v. Forty-Estremera*, 498 F.Supp.2d 468, 471-72 (D.P.R. 2007). Moreover, as the court in *Ragland* noted, "It is undoubtedly true that other courts have reduced sentences as a result of Amendments 706 and 711 below an amended Guidelines range in an oral decision that would not be easily found by counsel or by other courts." 2008 WL 2938662 at *6.

12

While other Circuit Courts of Appeal have yet to follow *Hicks* in determining that *Booker* and *Kimbrough* preclude application of a mandatory guideline limitation on a district court's sentencing discretion under § 3582(c), the Seventh Circuit acknowledged, in *dicta*, a district court's authority to sentence below U.S.S.G. § 1B1.10's limits. *See United States v. Taylor*, 520 F.3d 746, 748-49 (7th Cir. 2008) (declining to reach the issue, but noting, "like the rest of the guidelines, this provision may be merely advisory," and, "[i]n any event, *Kimbrough*, following *Booker*, allows a judge to sentence below the guideline range"). The Fifth Circuit, while not following *Hicks*, has acknowledged the viability of the issue – "whether Booker applies to § 3582(c)(2) proceedings (as the Ninth Circuit has held), rendering the process set out in USSG § 1B1.10(b) advisory." *United States v. Robinson*, 542 F.3d 1045, 1052 (5th Cir. 2008) (granting request for court-appointed counsel in § 3582(c) sentencing proceeding).

Mr. Frazier' original guideline range in this case was elevated pursuant to U.S.S.G. § 4B1.1 because this Court determined that he was a "career offender." The Sentencing Commission, in what can only be described as *ultra vires* activity, amended § 1B1.10 to eliminate the district courts' authority to determine from the outset whether defendants sentenced as career offenders are even eligible for a reduction in sentence under § 3582(c)(2). *See* U.S.S.G. § 1B1.10(a)(2)(B) (Mar. 2008) (mandating that "a reduction … is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 4582(c)(2) if … an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range"); U.S.S.G. § 1B1.10 app. n. 1(A) (Mar. 2008) (stating that "[e]ligibility for consideration under 18 U.S.C. § 3582(c)(2)" is not "triggered" if a retroactive amendment "does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision"). No

matter how forcefully written by the Commission, these policy statements are not binding on this Court after *Booker*. *See Kimbrough*, 128 S.Ct. at 570; *Hicks*, 472 F.3d at 1170–73.[4]

In sum, the extent of the difference between the guideline range that results from applying the career offender guideline and the guideline range that results from not applying such an enhancement is "surely relevant" to the exercise of this Court's post-*Booker* discretion under § 3553(a). *Gall*, 128 S. Ct. at 591 ("the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant"). This Court's task is to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing under § 3553(a). If applying a career offender guideline artificially inflates a defendant's guideline range, this Court has the discretion to reject that guideline. *See Kimbrough*, 128 S. Ct. at 570; *Rita*, 127 S. Ct. at 2468.

Mr. Frazier urges this Court to reduce his sentence. This Court should re-calculate his guideline range in accord with Amendment 706 by lowering the base offense level by at least two levels, and taking into account the sentencing reduction he previously received based on his substantial assistance to the government. Taking into account any relevant disparities–the disparity inherent in the various career offender offense levels resulting from the statutory maximums driven by the irrational crack/powder ratios, or the increased disparity between the re-calculated guideline range and the range that results from applying the career offender guideline–this Court should exercise its discretion under *Booker* and § 3553(a) and reduce Mr. Frazier's sentence to a sentence that is not greater than necessary to fulfill the purposes of sentencing.

---

[4]*But see*, *United States v. Thomas*, 524 F.3d 889 (8th Cir. 2008) (affirming denial of § 3582(c) relief to defendant sentenced within career offender guideline range); *United States v. Moore*, 541 F.3d 1323 (11th Cir. 2008) (affirming denial where defendants were sentenced below career offender guideline range based upon departures other than over-representation of criminal history or offense level).

CONCLUSION

The Sentencing Commission would have this Court believe that a career offender case is beyond its reach. Such an approach is without legal force in the face of Supreme Court precedent and Congressional legislation to the contrary, and is certainly inconsistent with an individualized judicial assessment of the human being standing before the court. Section 3582(c)(2), by mandating that this Court impose a new sentence in accord with § 3553(a), requires this Court to individualize the new sentence it imposes on Mr. Frazier. No longer are district courts relegated to function as mere calculators. Therefore, Mr. Frazier requests that this court grant this motion and reduce his sentence accordingly. In the alternative, Mr. Frazier requests a hearing to resolve this matter.

Respectfully requested this 10th day of December, 2008.

/s/ Thomas P. McNamara
THOMAS P. McNAMARA
Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street
Suite 450, Wachovia Capital Center
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Thomas_McNamara@fd.org
N.C. State Bar No. 5099
LR 57.1 Counsel
Appointed

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

ROBERT J. HIGDON, JR.
Assistant United States Attorney
Suite 800, Federal Building
310 New Bern Avenue
Raleigh, NC 27601-1461

by electronically filing the foregoing with the Clerk of Court on December 10, 2008, using the CM/ECF system which will send notification of such filing to the above.

This the 10th day of December, 2008.

/s/ Thomas P. McNamara
THOMAS P. McNAMARA
Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street
Suite 450, Wachovia Capital Center
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Thomas_McNamara@fd.org
N.C. State Bar No. 5099
LR 57.1 Counsel
Appointed